AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

FILED ___ ENTERED
___ LODGED ___ RECEIVED

MAR 29 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. MJ19-128
Information associated with Facebook, Inc. user ID's )
100000040062226 and 115560115151566 that is stored at )
Facebook, Inc., more particularly described in Attachment A )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Information associated with Facebook, Inc. user ID's 100000040062226 and 115560115151566 that is stored at Facebook, Inc., more particularly describe in Attachment A, incorporated herein by reference.

located in the ___Northern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. §7206 | Fraud and False Statements |
| 18 U.S.C. §1343 | Fraud by Wire |
| 18 U.S.C. §1028A | Aggravated Identity Theft |

The application is based on these facts:
☑ See Affidavit of Special Agent Eric Huynh, continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

_____
Applicant's signature

Eric Huynh, Special Agent
Printed name and title

⦿ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 03/29/2019

_____
Judge's signature

City and state: Seattle, Washington      Paula L. McCandlis, United States Magistrate Judge
Printed name and title

USAO: 2018R01115

# AFFIDAVIT OF ERIC HUYNH

STATE OF WASHINGTON )
) ss.
COUNTY OF KING )

I, Eric Huynh, being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Social Security Administration, Office of the Inspector General (SSA-OIG), assigned to the Seattle field office, and have been since April 2017. From 2010 to 2017, I was a Special Agent with the United States Army Criminal Investigation Division. Since becoming an investigator I have received training and conducted investigations related to homicide and suicide, sexual assault, drugs, child abuse and exploitation, fraud, larceny, and counter-terrorism. I have found, in my experience, subjects of all types of criminal investigations routinely use digital devices and social media in the commission of a crime.

2. I make this affidavit in support of an application for a search warrant for the Facebook, Inc. (Facebook) accounts 100000040062226 and 115560115151566, with the user names "SJKrier" and "KrierAssociates" (respectively), stored at premises owned, maintained, controlled, or operated by Facebook, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A to the requested warrant. I am seeking a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B. A preservation request for both accounts was previously sent to Facebook.

3. The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this

AFFIDAVIT OF SA HUYNH - 1
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Wire Fraud, in violation of 18 U.S.C. § 1343, Tax Fraud, in violation of 26 U.S.C. § 7206, and Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, have been committed by Steven KRIER. There is also probable cause to search the information described in Attachment A and Section I of Attachment B for evidence, instrumentalities, contraband and fruits of these crimes, as described in Section II of Attachment B.

## II. THE INVESTIGATION

5. This investigation of Steven KRIER was started after the Black Diamond Police Department (BDPD), in Black Diamond, WA, referred information to the SSA-OIG and the Treasury Inspector General for Tax Administration (TIGTA) about KRIER being in possession of suspicious documents. BDPD executed a search warrant on KRIER's residence at 32631 5th Ave, Black Diamond, WA, on July 2, 2018, which recovered, among other things: personally identifiable information (PII) for about 26 people; Internal Revenue Service (IRS) documents suggesting he filed tax returns using other peoples' PII; computer-generated printed lists of user names for approximately 90 Intuit accounts (Intuit is the parent company for TurboTax, a computer/internet based tax preparation program); stolen mail; state-issued ID cards for other people; Social Security Cards, and multiple electronic devices. All items were seized pursuant to the warrant.

6. On August 1, 2018, I reviewed the evidence obtained by BDPD and found evidence of SSN misuse characterized by names and SSNs that did not match in the SSA

AFFIDAVIT OF SA HUYNH - 2
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

databases, and 2016 tax documents containing the information of a person that died in 2010. I also noted the address on many of the documents was 32631 5th Ave, Black Diamond, WA—KRIER's address. In addition to the PII found during the search of KRIER's residence, the BDPD found letters from the Social Security Administration Business Services Online (SSA-BSO), the Washington State Secretary of State (SOS), and the Washington State Department of Revenue (DOR) for a business called "Krier Associates PLLC". Information related to this business on the SOS and DOR websites identified KRIER as the governing person. Open source searches for Krier Associates showed the business was being represented as a paralegal and tax preparation business.

7. On August 29, 2018, I received information from the SSA-BSO regarding KRIER's account. SSA-BSO is a service that facilitates the secure exchange of information between the SSA, business, individuals, employers, attorneys, and third parties. KRIER submitted an application for access to SSA-BSO on April 15, 2018. The packet contained an application for an Employer Identification Number (EIN) to the IRS where he stated he was the owner of Krier Associates PLLC, a letter from the IRS verifying he was assigned an EIN (82-4164493), and a copy of his LinkedIn profile showing his picture along with the text, "Steve Krier, CEO of Krier Associated PLLS, PS". The profile page indicated KRIER was employed as an "Independent Associate Pre-Paid Legal Services Inc. & Identity Theft Shield, Krier Associates PLLC." Based on this information, I believe KRIER is the owner and operator of Krier Associates PLLC.

8. On August 22, 2018, SA Kerry Gee, TIGTA, interviewed E.V. A Form 1040X (Amended Tax Return) containing E.V.'s PII was found in KRIER's residence during the execution of a search warrant by the BDPD. E.V. told SA Gee that she hired KRIER to prepare and file her 2017 Federal income tax return. E.V. said she trusted KRIER because he had a business, Krier Associates LLC, whose Facebook page listed KRIER as a LLLT (Limited License Legal Technician). E.V.'s 2017 tax return was split into two separate accounts without her authorization. The first was an account controlled

AFFIDAVIT OF SA HUYNH - 3
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

by E.V. and the other was controlled by KRIER. Money from her 2017 tax refund was also used to open a U.S. Savings bond in her name without her authorization.

9.  On August 30, 2018, SA Gee and I interviewed D.H. and S.O., both of whom hired KRIER to prepare and file their 2017 tax returns. In March 2018, D.H. provided documents containing her PII to S.O., who in turn gave it to KRIER. S.O. told us she scanned D.H.'s documents and sent them via Facebook instant messenger to KRIER. After D.H.'s information was given to KRIER, a line of credit was opened in her name at Silver Cloud Financial without her authorization. D.H. provided documents for the fraudulent account, which showed it was opened online, using D.H.'s PII, but with KRIER's telephone number and e-mail address. S.O. provided screenshots of instant message conversations with KRIER on Facebook. Review of the messages showed KRIER engaged in conversations about preparing taxes for other people through his personal Facebook account over Facebook messenger.

10.  On August 28, 2018, I requested the SSA Digital Forensics Team (DFT) conduct an internet and social media examination related to KRIER, and his business Krier Associates. The examination was completed on October 19, 2018, and provided publicly available information for KRIER's personal Facebook profile (https://www.facebook.com/sjkrier (Profile ID: 100000040062226), where he represents himself as a "Licensed Legal Practitioner" at Krier Associates. The examination also provided information about KRIER's LinkedIn Profile, which showed he was the CEO of Krier Associates. The Facebook profile for Krier Associates (https://www.facebook.com/krierassociates (Profile ID:1155601151566), contained posts that advertised discounts for people who filed their 2018 taxes early.

11.  On January 23, 2019, SA Gee and I interviewed T.D. She hired KRIER to prepare her tax return for 2017 and used his services for "the last couple of years." T.D. stated she communicated with KRIER about the preparation and filing of her tax return, her boyfriend's tax return, as well as her friend's tax return, over Facebook messenger, through KRIER's business profile "Krier Associates" and his personal profile. T.D.

AFFIDAVIT OF SA HUYNH - 4
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

provided screenshots of conversations she had with Krier Associates and Steve Krier regarding the details of her taxes. In one message Krier Associates said, in part: "Yeah I had to do a lot of explaining to her…and hers really wasn't even that much to be that nervous about. I mean, I do fudge some numbers here and there and that's how I get the results that I get and nobody else does. But I don't ever do anything I wouldn't do on my own taxes and I only do it where it don't really draw any attention and can't be verified anyways…". In a message with Steve Krier, T.D. wrote, in part: "Can you please let me know what is going on? I just got off the phone with TurboTax. Sounds like you did use TurboTax and that my return was more than what you told me but my portion that you told me ($10k) is the same and you're taking between $300-$400 dollars?" T.D. told us she referred her cousin, J.D., to KRIER for tax preparation services.

12. On January 23, 2019, SA GEE and I interviewed J.D. He stated he used KRIER for his 2016 and 2017 tax returns. We reviewed information from those tax returns with J.D. and he stated he did not authorize KRIER to split his tax return, or open a US Savings bond in his name. J.D. said all his communications with KRIER about his taxes were on Facebook messenger, through KRIER's business or personal page. J.D. showed us Facebook messages with Krier Associates regarding his taxes. In one message, Krier Associates wrote, in part: "Being a CLA I have an advantage over a CPA who just goes with whatever the IRS tells them they can do. I push it all the way the top and over the edge cuz I know Tax Court proceedings will always be on my side by arguing the same exact arguments that have persuaded then in the past…CPAs don't know shit about that lol". The most recent communication with KRIER was on January 5, 2019. JD said KRIER has asked if J.D. wanted to use him to complete his 2018 taxes.

13. I have had contact with IRS Criminal Investigation Special Agent Mark Pahnke. SA Pahnke provided the PPI and Intuit Account information obtained in the search warrant by BDPD to the IRS Scheme Development Center (SDC). The primary function of the SDC is to identify and develop schemes for the purpose of referring and supporting high-impact criminal tax and related financial investigations. The SDC

AFFIDAVIT OF SA HUYNH - 5
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

reviewed this information and performed data analysis in the IRS computer records system to determine if there were indications of fraud in tax returns that appeared to be prepared by or connected to KRIER. The SDC determined that 78 tax returns for tax years 2013 to 2018 were identified as being part of a possible fraud scheme. It appeared that these 78 tax returns could have claimed fraudulent wages, federal withholding, tax credits, etc. It also appears that some of the returns could have been filed using stolen identities. A few of the significant items identified by the SDC that indicate tax fraud are as follows:

    a. Two of the tax returns included in this scheme were specifically identified by taxpayers as false returns. These taxpayers contacted the IRS and said that they did not file the returns and they were victims of identity theft. The sum of the refunds issued on these returns is $20,142.

    b. One of the returns included in this scheme was filed for an 86 year old man that the SDC identified as a victim of identity theft. The refund amount on his return was $2,230.

    c. Duplicate employers, bank accounts, street addresses, email addresses, IP addresses, and occupations are claimed on tax returns included in this scheme.

    d. KRIER listed Larry Jackson as his spouse in 2013 to 2016. In 2012 he listed the same taxpayer Larry Jackson as his nephew.

    e. Certain bank accounts in the scheme received tax refunds from multiple tax returns.

14. On March 1, 2019, SA Gee and SA Pahnke interviewed N.W. In that interview N.W. stated he had his 2017 tax return prepared by KRIER. He stated that KRIER communicated with him exclusively through Facebook messenger. This included sending KRIER tax information and documents over Facebook messenger so that his tax return could be prepared. N.W. showed SA Gee and SA Pahnke his phone which had all of the Facebook messenger communications between them. N.W. stated that all of their

AFFIDAVIT OF SA HUYNH - 6
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communication was for the purpose of preparing his return. SA Pahnke went through the N.W.'s 2017 Form 1040A U.S. Individual Income Tax Return filed with the IRS. He noted that the tax return filed with the IRS contained a $1,500 education credit. N.W. stated that he did not know why that was on his tax return. He did not go to school and he did not tell KRIER to put that on his tax return. N.W. explained that the tax return that KRIER prepared for him was stopped by the IRS and he had to go to meet with IRS to confirm the information in his return before they would process it. He took a day off work and went into the IRS office and got his tax return filed. He later told KRIER that he refused to pay him a tax preparation fee due to the problems he experienced with filing his tax return.

### III. FACEBOOK SOCIAL NETWORKING SERVICES

15. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and, sometimes, with the general public.

16. Facebook asks users to provide basic contact and personal identifying information, either during the registration process or thereafter. This information includes the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become

AFFIDAVIT OF SA HUYNH - 7
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

19. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the events' time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that typically are visible to anyone who can view the user's profile.

20. Facebook allows users to upload photos and videos. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been

AFFIDAVIT OF SA HUYNH - 8
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

21. Facebook users can exchange messages on Facebook with other users through a "Private Message" feature. These messages, which are similar to e-mail and text messages, are sent to the recipient's Facebook "Inbox," which stores copies of messages sent by the recipient. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. Facebook also has a Video Calling feature, and, although Facebook does not record the calls themselves, it does keep records of the date of each call.

22. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

23. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

24. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

25. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

26. Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

AFFIDAVIT OF SA HUYNH - 9
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  27. The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page. Gifts cost money to purchase, and a personalized message can be attached to each gift. Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

28. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

29. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

30. Some Facebook pages are affiliated with groups of users, rather than one individual user. Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter. Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group. Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

31. Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

AFFIDAVIT OF SA HUYNH - 10
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

33. Facebook has a service known as "Facebook Messenger," which allows one Facebook user to communicate directly with another. These messages are stored within the user's profile for an indefinite period of time and can only be deleted by the user. Provided the user had not deleted the messages, Facebook is able to provide this information.

34. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

35. Therefore, the records of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## IV. INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

36. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by

AFFIDAVIT OF SA HUYNH - 11
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## V. REQUEST FOR NONDISCLOSURE AND SEALING

37. I request, pursuant to the preclusion-of-notice provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not to notify any person (including the subscriber or customer to which the materials relate) of the existence of this warrant for such period as the Court deems appropriate. The government submits that such an order is justified because notification of the existence of this Order would seriously jeopardize the ongoing investigation. Such a disclosure would give the subscriber an opportunity to destroy change patterns of behavior and to continue his flight from prosecution

38. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing fugitive investigation that is neither public nor known to the target of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation by assisting the target's continued flight from prosecution.

## VI. CONCLUSION

39. Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offenses being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. Accordingly, by this Affidavit, I

AFFIDAVIT OF SA HUYNH - 12
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

DATED this 29th day of March, 2019.

Eric Huynh, Special Agent
Social Security Administration
Office of the Inspector General

SUBSCRIBED AND SWORN before me on this 29th day of March, 2019.

PAULA L. MCCANDLIS
United States Magistrate Judge

AFFIDAVIT OF SA HUYNH - 13
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A
**Description of Property to be Searched**

1. This warrant applies to information associated with the Facebook user ID's 100000040062226 and 115560115151566, stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A - 1
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B
### Particular Things to be Seized

**I.   Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook shall disclose the following information to the government for the user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; Friend lists, including the Friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

ATTACHMENT B - 1
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

 (g) All IP logs, including all records of the IP addresses that logged into the account;

 (h) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

 (i) All information about the Facebook pages that the account is or was a "fan" of;

 (j) All past and present lists of friends created by the account;

 (k) All records of Facebook searches performed by the account;

 (l) All information about the user's access and use of Facebook Marketplace;

 (m) The types of service utilized by the user;

 (n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

 (o) All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

 (p) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

**II. Information to be seized by the government**

The following information described above in Section I that relates to the ongoing fraud investigation involving Steven Krier, for the user ID's identified on Attachment A:

 (a) Any content including e-mails, messages, texts, photographs, visual images, documents, spreadsheets, address lists, and contact lists

 (b) All records relating to who created and used the user ID's, and all records identifying any person with whom the user has been in contact

ATTACHMENT B - 2
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(c) All subscriber records associated with the specified accounts, including name, address, local and long distance telephone connection records, records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service including any credit card or bank account number.

(d) Any and all other log records, including IP address captures, associated with the specified accounts.

(e) Any records of communications between Facebook and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account. This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

ATTACHMENT B - 3
USAO #2018R01115

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970